**UNITED STATES of America, Appellant,**

v.

**LITTON SYSTEMS, INC., d/b/a Ingalls Nuclear Shipbuilding Division, Appellee.**

**No. 77–2191.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1978.

Decided April 4, 1978.

Kalish, Levy & Kauffman, Philadelphia, Pa., W. W. Koontz, John S. Stump, Boothe, Prichard & Dudley, Alexandria, Va., on brief), for appellee.

Before WINTER, BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

The United States appeals from an order of the district court dismissing a one count indictment against Litton Systems, Inc., because of prosecutorial misconduct during pre-indictment negotiations between the parties. We vacate the order of dismissal and remand the case for further proceedings.

I

In 1972 the Ingalls Nuclear Shipbuilding Division of Litton Systems, Inc., filed a claim with the Navy for approximately $30 million in connection with a contract to construct nuclear submarines. The company appealed an adverse decision by the Navy contracting officer to the Armed Services Board of Contract Appeals, which in April, 1976, awarded Litton more than $16 million. Both parties agreed not to ask for reconsideration of the award.

In March, 1975, after the Board had concluded its hearings but before it announced its decision, the district court impaneled a federal grand jury to investigate Litton's claims against the Navy. At a conference with the assistant United States attorneys handling the investigation, Vincent J. Fuller, counsel for Litton, inquired whether there might be an alternative to the criminal investigation. One of the assistants responded that the government did not presently have enough evidence to make such a decision. Fuller also asked for advance notice if they decided to seek an indictment because he wanted a chance to attempt to dissuade the government from proceeding.

Toward the end of the grand jury's term, the government lawyers concluded that although the falsity of Litton's claims could

William B. Cummings, U. S. Atty., Alexandria, Va. (Frank W. Dunham, Jr., Joseph A. Fisher, III, Asst. U. S. Attys., Alexandria, Va. and Sara S. Beale and Elliott Schulder, Dept. of Justice on brief), for appellant.

Bruce W. Kauffman, Philadelphia, Pa. (David H. Pittinsky, Stephen J. Mathes, Lawrence D. Berger, Dilworth, Paxson,

be proved, the evidence of criminal intent was insufficient to establish guilt beyond a reasonable doubt. They therefore decided to let the term expire without seeking an indictment and to continue the investigation, exploring several promising leads that would enable them to prosecute the corporation rather than individual employees. About the same time, an attorney paid by Litton to represent employees before the grand jury suggested to Frank W. Dunham, Jr., the Assistant United States Attorney in charge of the investigation, that someone should talk to Fuller about alternatives to criminal prosecution. Dunham knew that this attorney communicated frequently with Litton's counsel and, recalling Fuller's earlier requests, he decided to confer with Fuller.

On September 9, 1976, Dunham explained to Fuller that the government had evidence that Litton's claim was false but that it had not yet found sufficient proof of willfulness and criminal intent. He told Fuller that no indictment would be returned but that the investigation would have to continue. Dunham said that he saw a possible way to resolve the controversy but was "reluctant to discuss it without assurances first being made that the discussions would not be taken as a threat or treated as other than a good faith attempt to resolve the intent question." Fuller agreed to this stipulation, encouraged Dunham to proceed, and said that he would terminate the talks any time he deemed them inappropriate or improper. Dunham then proposed that:

A. Both Litton and the Navy would petition to reopen the [Armed Services Board of Contract Appeals] proceeding;

B. Both Litton and the Navy would join in application to the Court for a [Federal Rule of Criminal Procedure] 6(e) Order to permit inspection by Litton and the Navy of grand jury materials for use by both parties in the reopened [Board] proceedings;

C. The Government would not assert fraud as a defense in the Court of Claims to any final judgment for Litton in the [Board] nor would it initiate any civil fraud suits;

D. The criminal investigation would be terminated.

Elaborating on this outline, Dunham emphasized that, upon hearing whatever additional evidence either side wanted to introduce, the Board could adjust its award up or down or let it stand.

Fuller found the proposal reasonable, describing it as a "breath of fresh air," and a few days later he advised Dunham that Litton was interested in discussing it. At a second meeting, Dunham disclosed the evidence of the falsity of Litton's claim, and the parties discussed the mechanics of reopening the proceeding before the Board and getting the corporate and governmental approvals necessary to implement the plan. Two days later, however, Glen McDaniel, the chairman of Litton's executive board, who had not conferred with the government attorneys, met with Deputy Attorney General Harold R. Tyler, Jr., complaining that Litton was being threatened with indictment if it refused to reopen the Board proceedings. Fuller, upon learning of this complaint from Dunham, agreed that it violated their understanding concerning discussion of the proposal and offered to advise the Deputy Attorney General of this. After inquiring into the settlement negotiations, the Deputy Attorney General wrote Litton that he found nothing improper in them. He suggested that Litton's lawyers contact the government attorneys if further negotiations were desired.[1]

1. The Deputy Attorney General's letter of October 7, 1976, to McDaniel stated:
   This letter is in response to the concerns you raised at our meeting of September 15, 1976. I have met with those in the Department of Justice who have been handling the investigation of Litton Industries. I see no compelling evidence that the settlement discussions entered into between Litton and the Government were anything other than good faith attempts, on both sides, to explore freely all possible avenues by which this investigation could be brought to a conclusion satisfactory to all concerned. The Department lawyers involved in these talks, I am told, made clear to Litton's lawyer, Mr. Fuller, at the outset of the discussions that they do not possess authority to settle without approval from their superiors in

At Litton's request, the parties again conferred, but on November 1, 1976, Litton rejected the proposal.

The government's investigation continued throughout the final months of 1976. On January 17, 1977, Assistant Attorney General Richard Thornburg requested the United States Attorney to present the matter to a new grand jury for the purpose of seeking an indictment. Attorney General Griffin Bell approved prosecution of the case on February 7, 1977.

Dunham honored Fuller's request and advised him of the decision to indict. In response, Litton expressed a desire to avoid prosecution and to return the matter to the Board along the lines of the government's proposal. Dunham indicated that the prosecutors were now opposed to such a disposition but that he would forward any proposal from Litton to the Department of Justice for review. At Litton's request, the Attorney General, his principal assistants for matters pertaining to criminal prosecutions and fraud, and the United States Attorney and his assistants met with Fuller, McDaniel, and two members of Litton's board of directors. At the conclusion of this conference the Attorney General found no justification for terminating the prosecution. The next day the grand jury returned the indictment. Litton, represented by new counsel, subsequently moved to dismiss it.

The district court granted Litton's motion. It found that the government's proposal constituted an implied threat of indictment designed to coerce Litton into giving up its award and that, when Litton refused, the government retaliated by obtaining the indictment. The district court acknowledged that the bargain could arguably have been justified if the government had made its proposal after indictment. Nevertheless, it held that the government's use of the grand jury as a bargaining tool to upset the Board's award violated Litton's substantive due process right to have the

finality of its civil claim attacked only within the statutory and regulatory schemes established for that purpose. Although Fuller did not testify, the court discounted his waiver of objections on the ground that the situation was so inherently coercive that no prudent attorney could have refused to entertain the proposal.

## II

This case is governed by the principles expressed in *Bordenkircher v. Hayes*, —— U.S. ——, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The district judge, it should be noted, did not have the benefit of that opinion, for it was published after he granted Litton's motion to dismiss the indictment. Hayes, a state prisoner, had been indicted for uttering a forged check. During plea negotiations, the prosecutor offered to recommend a five year sentence if Hayes would plead guilty; if Hayes would not plead guilty, the prosecutor threatened to indict him as a recidivist, for which the mandatory penalty was life imprisonment. Hayes refused the offer, and the prosecutor obtained the second indictment. On his plea of not guilty, Hayes was convicted of the charges in both indictments and sentenced to imprisonment for life.

Hayes—like Litton—relied primarily on *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and their progeny. These cases hold that after a defendant has succeeded in having his initial conviction vacated, the due process clause protects him from the vindictive imposition of an increased sentence on retrial and from the fear of retaliation by either a judge or prosecutor. The Supreme Court, however, refused to apply these cases to Hayes's situation. The Court recognized that the prosecutor's threat to procure another indictment was designed to deter Hayes from exercising his right to plead not guilty. It empha-

---

the Department; this is in fact the case in all such settlement discussions.

I would suggest that your outside counsel, Mr. Fuller, contact our Department attorneys with

a view to resuming these exploratory discussions, so that this matter may again proceed on course.

sized, however, "that the due process violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from the exercise of a legal right, . . . but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." *Bordenkircher v. Hayes*, 98 S.Ct. at 667–68. It concluded that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecutor's offer." 98 S.Ct. at 668. Applying these principles, the Court sustained Hayes's conviction.

Litton's situation is essentially like Hayes's. Although the prosecutor did not threaten to indict Litton if it rejected the proposal, he said that the fraud investigation would be continued to determine whether Litton should be indicted. Litton's Board award was not final; even if Litton rejected the proposal, the government could attack the award for fraud in the Court of Claims. 28 U.S.C. § 2514; *see S & E Contractors, Inc. v. United States*, 406 U.S. 1, 15–17, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972). Nevertheless, Litton was asked to forego a right as a price for the government's termination of the investigation. Specifically, Litton was asked to give up its right to bar the Board's reconsideration of its claims.

The district court did not find that Deputy Attorney General Tyler, Assistant Attorney General Thornburg, or Attorney General Bell, who made the critical decisions in this case, were vindictive or retaliative. The absence of such a finding is proper because the evidence would not support a contrary ruling.[2] Instead, the district court concluded that it was unlawful for the prosecutor to use the implied threat of indictment to deter Litton from exercising a legal right. But this is precisely what *Hayes* allows a prosecutor to do when he is bargaining with the potential defendant of a threatened indictment.

Litton protests that *Hayes* is distinguishable because the government lacked proof that Litton had committed a crime when the prosecutor offered his proposal. We do not believe this distinction is significant. The court of appeals granted Hayes a writ of habeas corpus in part because the prosecutor had known about Hayes's recidivism when he obtained the initial indictment charging uttering a forged check. This prior knowledge, the court of appeals reasoned, justified a conclusion that vindictiveness alone motivated the prosecutor in obtaining the subsequent indictment. *See, Hayes v. Cowan*, 547 F.2d 42, 44 (6th Cir. 1976). The Supreme Court's recognition of the prosecutor's prior knowledge clearly put to rest the court of appeal's notion that this factor supported granting the writ. Indeed, in *Blackledge v. Perry*, 417 U.S. 21, 29 n. 7, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court explained that a prosecutor's inability to proceed on a more serious charge at the time of the initial indictment would indicate that a subsequent indictment was not motivated by vindictiveness. Accordingly, we cannot accept Litton's argument that *Hayes* is inapplicable. We do not believe that the Court intended to confine plea bargaining to those situations where the prosecutor possesses irrefutable proof of the most serious crime for which a defendant is ultimately prosecuted. A prosecutor's bargaining position should not be so circumscribed. This is not to say, however, that a prosecutor can employ deceptive tactics about the strength of his case to induce a bargain.

In this case the government did not engage in any deception. The attorney in charge of presenting the case to the grand jury candidly told Litton's attorneys that while the government had proof of false claims, it had not yet obtained sufficient evidence of willfulness and criminal intent to warrant prosecution. The government's

---

**2.** Litton insists that an Assistant United States Attorney's remark—"Litton bought this indictment"—conclusively demonstrates vindictiveness. There is no evidence, however, that the Assistant, who was not in charge of trying the government's case, reflected the views of the officials in the Department of Justice who were responsible for instituting the criminal prosecution.

lack of knowledge about criminal intent and the possibility of further investigation were factors that Litton could weigh in deciding whether to accept the government's proposal. The prosecutor's candor in revealing the weakness of the government's case dispels any notion of vindictiveness.

Litton also contends that the rejection of its belated acceptance of the government's proposal manifests vindictiveness and renders *Hayes* inapplicable. We find no merit in this argument. *Hayes* does not require a prosecutor to keep an offer of a bargain open indefinitely after it has been rejected. Again, we believe that a prosecutor's bargaining position should not be so closely circumscribed. There are many reasons why a prosecutor should be permitted to put a rejected offer aside and proceed with the development of the government's case. Certainly, after new evidence of the defendant's wrongdoing has been uncovered, prosecutors should not be bound by an offer rejected months before when the case presented quite a different profile.

Finally, *Hayes* cannot be distinguished because it dealt solely with criminal proceedings while this case presents a mixture of civil and criminal litigation. In *Hayes* the prosecutor's threat did not violate the due process clause even though life imprisonment was at stake if Hayes rejected the offer and subjected himself to indictment. We cannot say that the government violated the due process clause in this case where rejection of its offer would not subject anyone to imprisonment and the issues are primarily monetary. The prosecutor did not even ask Litton to forego its award but only proposed that the Board should be authorized to reconsider it in light of information not previously available. Moreover, the prosecutor did not advance the proposal as a means of leverage against an unrelated claim. The material elements of both the civil and criminal proceedings were closely interwoven, and the proposal was an effort to resolve all facets of an essentially single controversy.

■ Therefore, applying the principles expressed in *Hayes*, we conclude that the government did not abridge Litton's right to substantive due process.

### III

Litton also urges us to apply the familiar rule that the judgment of a court can be defended on any ground consistent with the record. *Massachusetts Mutual Life Ins. Co. v. Ludwig*, 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976); *see* C. Wright, Federal Courts 523 (3d ed. 1976). It therefore seeks affirmance of the dismissal of the indictment on grounds rejected by the district court. We agree with the district court that neither of these grounds warrants dismissal.

In May, 1976, after the Board announced its decision, a government attorney who was looking for a document relating to the Litton claims contacted Administrative Law Judge Bird, who had presided over the Litton proceedings. Both the government and Litton had been unable to find the document, and since Judge Bird's opinion referred to it, a subpoena had been issued requesting his copy. Judge Bird did not have the document either. The attorney showed Judge Bird a later version of the document and asked whether he had considered it in reaching his decision.

In July, 1976, a federal agent interviewed Judge Bird and Judge Solibakke in an attempt to determine whether three documents submitted by Litton which the government's investigation suggested were inaccurate had been material to the decision of the board of contract appeals. Judge Bird responded that, since two of the documents in question were cited in his opinion, they were material to it, while the third, which was not cited, probably was not material. The agent who conducted the interview stated in his affidavit that he did not reveal any of the proceedings of the grand jury to the judges and that he had acquired the basis for all of his comments independently of the grand jury proceedings.

In September, 1976, the grand jurors requested a final session in order to hear testimony from a group of government offi-

cials, including Judge Bird and Judge Solibakke. The prosecutor told the court that, while he wanted to accommodate the grand jury, he believed the testimony of these officials would not be relevant, and therefore he would not request issuance of the subpoenas. The Court directed that the subpoenas be issued, but the two judges never testified because the term expired before they could be heard.

 We conclude that these contacts present no grounds for dismissing the indictment against Litton. Initially, we see no basis for finding governmental misbehavior in the May, 1976, communication during the search for the missing document or in the issuance of the subpoenas in August, 1976, by the district court. As for the allegations that grand jury materials were improperly revealed during the May and July contacts, we note that the district court made no finding that materials were actually revealed. But even assuming that they were, the proper remedy would not be dismissal of the indictment. *United States v. Hoffa*, 349 F.2d 20, 43 (6th Cir. 1965), *aff'd on other grounds*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *United States v. United States District Court*, 238 F.2d 713, 721 (4th Cir. 1956).

 Litton also complains of the government's use of federal agents to summarize for the second grand jury the evidence heard by the first. But, citing *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the district court declined to rule that the use of hearsay evidence required dismissal of the indictment, especially since the indicting grand jury heard other evidence. After examining the record, we agree that nothing in the form or content of the government's presentation requires dismissal of the indictment.

The judgment is vacated, and the case is remanded for further proceedings.