796 P.2d 1115

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Bernice Johnson GARCIA, Defendant–Appellant.**

**No. 11211.**

Court of Appeals of New Mexico.

June 5, 1990.

Certiorari Denied July 20, 1990.

Hal Stratton, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Penni Adrian, Ron Koch, P.A., Albuquerque, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals her conviction for aggravated battery with great bodily harm, contending (1) the trial court erred in denying defendant's motion to dismiss the charge of aggravated battery on speedy trial grounds; and (2) the trial court erred in admitting testimony about a telephone call, the contents of which showed that defendant intended to injure the victim. We affirm the decision of the trial court.

## BACKGROUND.

On September 29, 1986, defendant and her codefendant (not a party to this appeal) were charged with an open count of murder in a criminal complaint. The murder charge was a result of injuries inflicted on the victim by defendant and codefendant on August 9, 1986, which resulted in the vic-

tim's death on September 28, 1986. Defendant and codefendant were arrested on September 30, 1986, and defendant was released on her own recognizance with restrictions. On September 4, 1987, a grand jury indictment was filed charging defendant and codefendant with voluntary manslaughter and aggravated battery arising out of the same incidents.

On November 30, 1987, defendant filed a motion to dismiss the charges based on the denial of her right to a speedy trial. A hearing on this motion was held on February 3, 1988. As a result of this hearing, the trial court found that defendant was prejudiced by the barest preponderance of the evidence and dismissed with prejudice the charge of voluntary manslaughter due to infringement of her speedy trial rights. The trial court, however, declined to dismiss the aggravated battery charge on speedy trial grounds, reasoning that the time did not begin to run against the state with respect to the aggravated battery charge until defendant was indicted. In addition, the court indicated that, because the aggravated battery charge was less significant, it involved less stress and prejudice.

On March 23, 1988, the New Mexico Supreme Court granted an extension of time to the state pursuant to SCRA 1986, 5–604(C). On April 18, 1988, defendant also requested and was granted an extension pursuant to Rule 5–604.

Defendant was tried on May 25, 1988, and convicted by the jury of aggravated battery with great bodily harm. Evidence of a telephone conversation, in which defendant admitted that she intended to injure the victim, was admitted at trial. Defendant claims that the trial court erred in admitting this evidence.

The state filed its notice of appeal of the dismissal of the voluntary manslaughter charge against defendant and her codefendant on speedy trial grounds on June 20, 1988. Defendant filed a notice of appeal from the court's decision denying her motion to dismiss the aggravated battery charge on June 30, 1988. This court dismissed the state's appeal on July 28, 1988, after the state had failed to oppose our calendar notice proposing that the constitutional protection against being placed in double jeopardy precluded further prosecution of the greater offense (voluntary manslaughter) after defendant had been convicted of a necessarily included lesser offense (aggravated battery). Defendant's appeal was dismissed on August 25, 1988, after defendant failed to oppose our calendar notice proposing dismissal for lack of a final order.

On December 28, 1988, on defendant's motion to reconsider the February ruling as to the assault and battery charge, the trial court vacated its dismissal of the voluntary manslaughter charges against defendant and her codefendant, although noting that this court's decision of July 28, 1988 precluded trial of the manslaughter charge against defendant. At the same time, the trial court denied defendant's motion for a new trial on the aggravated battery charge. Judgment and sentence was entered the same day, and defendant appealed from that order on January 3, 1989.

## SUPREME COURT EXTENSION.

■ We first address a threshold issue raised by the state, which is that this court may not consider a speedy trial claim in a case in which the supreme court has granted an extension. *State v. Apodaca*, 105 N.M. 650, 735 P.2d 1156 (Ct.App.1987); *State v. Mazurek*, 88 N.M. 56, 537 P.2d 51 (Ct.App.1975); *State v. Sedillo*, 86 N.M. 382, 524 P.2d 998 (Ct.App.), *cert. denied*, 419 U.S. 1072, 95 S.Ct. 662, 42 L.Ed.2d 669 (1974). Defendant contends that her appeal is based on the delay that preceded the extensions the supreme court granted in this case. In effect, she argues that this court may consider a speedy trial claim unless the claim depends upon a determination that the supreme court has already made. We agree.

Certainly a supreme court order granting an extension of time within which defendant may be tried precludes this court from reviewing a claim that the supreme court erred in granting the extension. *State v.*

*Sedillo.* Consequently, we may not review a claim that the right to a speedy trial has been denied because an extension was granted. *State v. Mazurek.* It is less clear that this court may not review a speedy trial claim whenever the delay between accusation and trial includes a period of time within a supreme court extension. *But cf. State v. Apodaca* (even if motion for a speedy trial was not appropriate when supreme court granted an extension, court of appeals cannot review the speedy trial claim after conviction, because court of appeals cannot review supreme court order). The basis of the *Mazurek/Sedillo* line of cases seems to be the finality of a supreme court decision. *See Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973); *State v. Sedillo.* Thus, we cannot review a speedy trial claim where it appears that the supreme court necessarily decided the issues underlying the claim. In *State v. McCrary,* 100 N.M. 671, 675 P.2d 120 (1984), however, the supreme court analyzed a speedy trial claim where its own extension comprised part of the delay. This suggests that the supreme court does not necessarily consider speedy trial violations when granting an extension under Rule 5–604.

■ Where the supreme court has expressly considered the issues underlying a claim that a defendant's right to a speedy trial has been violated, the supreme court's decision to grant the extension resolves the issues underlying the claim. That decision becomes the law of the case. *See Varney v. Taylor,* 79 N.M. 652, 448 P.2d 164 (1968). Thus, we would not engage in a balancing of the four speedy trial factors. *See Zurla v. State,* 109 N.M. 640, 789 P.2d 588 (1990). However, when the supreme court order does not indicate the issues the court considered, the granting of an extension of time to begin trial may mean only that the state has shown good cause for an extension.

■ Here, defendant filed an objection to the state's petition for extension. The order for extension from the supreme court states that the objection was considered before the extension was granted. This court may take judicial notice of supreme court records in connection with the granting of extensions. *State v. Vigil,* 85 N.M. 328, 512 P.2d 88 (Ct.App.1973). In her objection to the extension of time, defendant argued that the case had been pending for nineteen months without any fault on her part and any further delay would cause her additional prejudice. However, she did not invoke her right to a speedy trial, and it is unclear whether the supreme court expressly considered the speedy trial factors, *see Zurla v. State,* in granting the extension. Thus, we are reluctant to treat the order as a decision that defendant's speedy trial rights have not been violated by any of the delay preceding the granting of the extension.

Defendant's speedy trial claim on appeal is based solely on preindictment delay and does not rely on the delay caused by the supreme court's decision to grant the state's request for an extension of the six-month rule. Further, on appeal, her argument has been based in part on this court's decision dismissing the state's appeal, which was rendered after the supreme court granted the extension. Under these circumstances, we do not view *Alexander* as precluding our review of defendant's speedy trial claim. To the extent *Apodaca* suggests otherwise, it is overruled. We next address defendant's claim that the trial court erred in failing to dismiss the assault and battery charge when the court dismissed the voluntary manslaughter charge, as well as her claim that the trial court erred in admitting evidence about the telephone call.

## CLAIM OF DOUBLE JEOPARDY AND DENIAL OF SPEEDY TRIAL.

Defendant argues that if the voluntary manslaughter charge was dismissed because of a speedy trial violation, then the aggravated battery charge as a lesser included offense should have been dismissed on the same grounds. Defendant relies on this court's dismissal of the state's appeal as determining that the battery charge is a lesser included offense of the dismissed manslaughter charge. She also argues

that the trial court erred in applying the relevant analysis to the aggravated battery charge.

■ Defendant's argument raises an issue concerning the fifth amendment guarantee against double jeopardy. The guarantee against double jeopardy includes three protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Here we are concerned with the first and second protections.

We understand defendant's double jeopardy argument as a claim that the trial court's decision regarding the greater offense was inconsistent with its decision regarding the lesser offense. Nevertheless, even if there is a legal inconsistency in the trial court's decision to dismiss on speedy trial grounds the greater offense but to permit the state to proceed on the lesser offense, we are not bound to resolve the inconsistency by determining that the refusal to dismiss the lesser offense was improper. (We note that on later reconsideration the trial court found that the dismissal of the greater offense had been erroneous.) The merits of the dismissal of the greater offense were not decided on appeal. Rather, the state's appeal was dismissed on the ground that defendant had been placed in double jeopardy with respect to the lesser offense. We are not compelled to require dismissal of the lesser offense without examining the speedy trial claim on the merits.

■ In *Kilpatrick v. State*, 103 N.M. 52, 702 P.2d 997 (1985), our supreme court held that where the defendant posted a surety bond after arrest and lived under impairment of his liberty and under a cloud of unresolved criminal charges for almost a year prior to indictment, these factors required an analysis of his sixth amendment right to a speedy trial. Defendant argues similarly that her right to a speedy trial was violated by the eleven-month delay

that occurred between arrest, after which she was released on restrictions, and indictment. She contends that the delay was presumptively prejudicial and that the trial court erred in its application of the balancing test contained in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The state concedes that defendant's right to a speedy trial on the assault and battery charge was triggered with her arrest and release under restrictions. Although this court is not bound by the state's concession, *State v. Maes*, 100 N.M. 78, 665 P.2d 1169 (Ct.App.1983), we make that assumption in our analysis. *See generally* 2 W. LaFave & J. Israel, *Criminal Procedure* § 18.1(c), at 400 (1984) (discussing when right to speedy trial attaches).

In *Barker*, the Supreme Court set forth a four-part test as a guide to the determination of speedy trial claims. The four factors are length of delay, reason for the delay, defendant's assertion of his right, and prejudice to the defendant. *Id.; see also Zurla v. State.* The four factors, however, are not easy to apply and require a " 'difficult and sensitive balancing process * * * carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.' " *Id.,* 109 N.M. at 642, 789 P.2d at 590 (quoting *Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118–19).

To determine whether the delay of which defendant complains requires us to consider the four factors, we must consider the length of delay in light of the nature and complexity of the charge. *State v. Kilpatrick*, 104 N.M. 441, 722 P.2d 692 (Ct.App. 1986). The state argued at the motion hearing in February 1988 that the charge was complex because the case involved conflicting eyewitness accounts and a question of causation. The state admitted that the assistant district attorney to whom the case was assigned had the information necessary to bring the case before the grand jury as early as December 1986. However, there was evidence, upon which the trial court relied in making oral findings after the February hearing, that the delay from

December to April 1 was attributable to the prosecutor's attempts to meet with counsel for codefendant, who had indicated there might be additional, exculpatory evidence, which would support a decision not to proceed to trial. The trial court incorporated its oral findings into its written order denying the motion and also into its December 1988 order denying defendant's motion to reconsider the February ruling. On April 1, 1987, after at least one meeting had to be cancelled because counsel for codefendant could not be present, the prosecutor and counsel for codefendant met to discuss the existence of that evidence, and the prosecutor determined the additional evidence was not new. It is clear that the balance of the delay, approximately five months, stemmed from the trial schedule of the assistant district attorney and the need to transfer the case to another assistant district attorney for trial after the attempt to persuade the assistant district attorney to dismiss the charges failed.

In determining whether the delay in question is sufficient to trigger examination of the *Barker* factors, it is unclear whether the entire period of which defendant complains is relevant. *Cf.* Joseph, *Speedy Trial Rights in Application*, 48 Fordham L.Rev. 611, at 623, n. 72 (1980) (some jurisdictions calculate the length of delay for constitutional purposes by deducting from the total pretrial period the number of days' delay caused by, or attributable to, either the defense or circumstances beyond the prosecution's control; only delay caused by, or attributable to, the prosecution is considered within the first factor (length of delay) under this approach, which is arguably inconsistent with *Barker*); *see also State v. Mascarenas*, 84 N.M. 153, 500 P.2d 438 (Ct.App.1972) (where defendant causes or contributes to the delay, he or she may not complain of a denial of the right). For purposes of this opinion, we assume that the length of the preindictment delay in this case is sufficient to trigger an examination of the four *Barker* factors. Nevertheless, on balance, defendant has not established that her right to a speedy trial was violated.

Until April 1987, the state was engaged in activities that may be characterized as investigation. After April, the delay is attributable to a heavy case load. Investigation is a reasonable reason for delay. *Cf. United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (where reason for preindictment delay of eighteen months was continuing investigation, there was no violation of due process). Bureaucratic indifference, on the other hand, weighs more heavily against the state than simple case overload, particularly when a defendant has attempted to safeguard the right to a speedy trial. *Zurla v. State*, 109 N.M. at 644, 789 P.2d at 592. Here, the trial court found that the state had satisfactorily explained the delay prior to the indictment, and we agree that it is difficult to attribute any of the delay in this case to bureaucratic indifference. In any event, the length of the delay attributable to bureaucratic indifference is no more than five months, the time that elapsed after the date the prosecutor met with defense counsel to discuss the existence of exculpatory evidence.

Further, defendant asserted her right to a speedy trial only after all of the delay of which she complains on appeal. Her motion to dismiss was made two months after she was indicted. Thus, unlike the defendant in *Zurla*, there is no reason to weigh the third factor (assertion of the right) substantially in her favor. In fact, as the court noted in its order dated December 28, 1988, the record indicates that the prejudice of which defendant complains could have been avoided if defense counsel had moved to dismiss charges during the period of preindictment delay on the ground that no preliminary hearing had been held.

Defendant has made no claim of prejudice to her defense at trial, and she made only a minimal showing of prejudice arising out of anxiety and concern over the arrest and charge. She testified that she lost visitation time with her daughter and the esteem of her coworkers. She also endured emotional suffering, lost weight, was unable to plan her future, and lived in fear for herself and her family. The state argues that her showing is not sufficiently

different from the showing any criminal defendant could make to justify dismissing the charges on speedy trial grounds. We agree.

Under these circumstances, we do not believe defendant has established a delay that merits dismissal of the indictment. Where the delay of which defendant legitimately may complain is minimal and there has been no particular effort to assert the right to a speedy trial, a minimal showing of prejudice is insufficient to support a claim that the state has denied a defendant the right to a speedy trial.

ADMISSION OF EVIDENCE.

At trial, testimony was admitted concerning a telephone call made by defendant. Defendant argues that the identity of the caller was never properly authenticated.

Preliminary questions on admissibility of evidence such as the identity of a caller are determined by the trial judge under SCRA 1986, 11–104(A), (B). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." SCRA 1986, 11–901(A). Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, can be made by opinion based on hearing the voice at any time under circumstances connecting it with the alleged speaker. R. 11–901(B)(5). Because this was a jury trial, the court had to determine whether there was sufficient evidence to support a finding by the jury that the evidence was what the state claimed it to be.

Upon questioning by the trial judge, the witness testified that she was confident that the caller was defendant based on a previous telephone conversation that she had with defendant. The witness and defendant had both been married to the victim's son. The caller identified herself as defendant and the conversation was a continuation of the previous conversation between the witness and defendant. The conversations involved discussion of marital problems that they had commonly experienced with the victim's son. The witness stated that she recognized the language and terminology used by defendant from their previous conversation as being distinct to defendant. According to the witness, the content of the conversations involved experiences unique to one who had been married to the victim's son. This is enough evidence to allow admission of the conversation into evidence. We conclude the trial court did not err in admitting the telephone conversation made by defendant.

CONCLUSION.

We affirm defendant's conviction for aggravated battery with great bodily harm.

IT IS SO ORDERED.

DONNELLY and HARTZ, JJ., concur.