815 P.2d 642

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Arthur LUJAN, Jr., Defendant–Appellee.**

No. 12,527.

Court of Appeals of New Mexico.

May 28, 1991.

Certiorari Denied July 10, 1991.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Whitney Johnson, Albuquerque, for defendant-appellee.

## OPINION

**DONNELLY, Judge.**

The state appeals from an order of the trial court dismissing the indictment against defendant based on the trial court's finding that the state violated defendant's right to a speedy trial. The sole issue raised on appeal is whether the trial court erred in dismissing the indictment. We affirm the ruling of the trial court.

The state and defendant have stipulated to the material facts. Defendant was charged with aggravated assault on a peace officer. The charge arose out of an incident that occurred on June 12, 1989. Defendant was arrested on June 12, 1989; on June 13, 1989, he was arraigned and released on a $2,500 bond that remained in effect until the trial court dismissed the indictment. On June 14, 1989, the police report of the incident was completed. At the time of his arrest, defendant was on parole; as a result of the charges from the June 12, 1989, incident, his parole was revoked, and defendant was incarcerated at the state penitentiary until late November or early December 1989.

A preliminary hearing was not held in defendant's case. On June 26, 1989, approximately two weeks after defendant's arrest, defendant's attorney wrote a letter to the prosecutor advising him that he was representing defendant and requesting that he be given notice of any grand jury proceeding involving defendant.

From late June 1989 through November of the same year, defendant's attorney made several attempts to resolve the pending charges by proposing different plea bargains; however, each offer was rejected. Ultimately, on February 8, 1990, defendant was indicted on a charge of aggravated assault on a peace officer. He was rearrested and released after posting an additional bond. On February 19, 1990, defendant waived arraignment. On May 18, 1990, defendant received a definite trial setting for July 9, 1990. On May 31, 1990, he filed a motion to dismiss the charge against him, alleging a violation of his constitutional right to a speedy trial. After a hearing on defendant's motion on July 9, 1990, the trial court granted the motion to dismiss the charge with prejudice.

## CLAIM OF DENIAL OF SPEEDY TRIAL

■ The right to a speedy trial is a fundamental constitutional right. *Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990). The right protects a defendant against unreasonable and unnecessary delay in the resolution of criminal charges against him, as well as society's interest in the prompt

resolution of such charges. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Zurla v. State.* In *Barker*, the United States Supreme Court set out the test used to determine whether such right has been violated. The *Barker* test takes into account four factors: the length of the delay, the reason for the delay, the defendant's assertion of the right, and the prejudice to the defendant's right to a speedy trial. *See also Zurla v. State.* No one factor is decisive; rather, appellate courts must independently engage in the complex and sensitive process of balancing the factors.[1] *Id.; State v. Grissom*, 106 N.M. 555, 746 P.2d 661 (Ct. App.1987). We examine each of the *Barker* factors.

## A.  *Length of Delay*

At the outset we must determine whether the length of the delay is presumptively prejudicial in light of the nature and the complexity of the charges and the nature of the evidence against the accused. *See Zurla v. State; State v. Kilpatrick*, 104 N.M. 441, 722 P.2d 692 (Ct.App.1986) (*Kilpatrick II*). If the length of the delay is not presumptively prejudicial, we need not consider the other three *Barker* factors. *State v. Grissom; State v. Santillanes*, 98 N.M. 448, 649 P.2d 516 (Ct.App.1982).

The right to a speedy trial attaches when the defendant becomes an accused. *Kilpatrick v. State*, 103 N.M. 52, 702 P.2d 997 (1985) (*Kilpatrick I*) *on remand*, 104 N.M. 441, 722 P.2d 692 (Ct.App. 1986). In this case defendant became an accused for speedy trial purposes when he was arrested and released on bond on June 13, 1989. *See United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Kilpatrick I. Cf. State v. Sanchez*, 108 N.M. 206, 769 P.2d 1297 (Ct.App.1989) (right does not attach when defendant is arrested and released without restrictions pending further investigation). The parties

appear to agree that the end point of the delay period in this case is the date of the trial setting, July 9, 1990. Thus, the delay in question is approximately thirteen months. Because this case involves a relatively lengthy delay considering the simple nature of the charge and the readily available evidence, we believe the trial court correctly determined that the length of the delay was presumptively prejudicial. *See Salandre v. State*, 111 N.M. 422, 806 P.2d 562 (1991) (holding nine months marks minimum length of time in speedy trial claim that may be considered presumptively prejudicial, even for case involving simple charges and readily available evidence). *Cf. Work v. State* (thirteen-month delay held presumptively prejudicial where charges included four counts of criminal solicitation and one count of aggravated battery).

The state argues, however, that we should exclude from the delay period the time span dating from the first substantive plea discussion to the last plea discussion because the delay caused by the plea negotiations was for the benefit of defendant. After this case was briefed, our supreme court decided *Salandre*, and indicated that in considering the first *Barker* factor (length of delay), and whether the length of the delay is presumptively prejudicial, the court does not initially consider how much of the delay has been caused by the state or the defendant. *Salandre v. State*, 111 N.M. at 427–28, 806 P.2d at 567–68 (in deciding whether defendant has made a preliminary showing of presumptively prejudicial delay, "inquiry at this stage of a speedy trial claim into the remaining three factors would tangle the courts needlessly in consideration of minutiae of a case prior to the invocation of the full balancing test"). We follow this precept and consider the effect, if any, in the instant case of the unsuccessful plea negotiations in connec-

---

1.  In independently balancing each factor we are nevertheless cognizant of the statement of our supreme court in *Work v. State*, 111 N.M. 145, 148, 803 P.2d 234, 237 (1990), note 3, which quoted with approval from *State v. Holtslander*, 102 Idaho 306, 309 n. 2, 629 P.2d 702, 705 n. 2

(1981) indicating that " *'[i]t should be noted that each of the Barker factors involves primarily factual inquiries, so that the decision of the trial court granting a dismissal is entitled to great weight.'* " (Emphasis added.)

tion with our review of the second *Barker* factor involving the reason for delay.

B. *Reason for the Delay*

As defendant correctly points out, the state has a duty to bring defendant to trial. *See Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). The state responds, however, that four months of the delay in the instant case were attributable in part to the unsuccessful plea negotiations initiated by defendant, and in part due to the necessity of also waiting approximately three months for the convening of the grand jury once the negotiations broke down. We do not consider the state's argument concerning the period of delay caused by waiting for a grand jury to be convened, because it was not raised below. *See State v. Martin*, 101 N.M. 595, 686 P.2d 937 (1984) (appellate court cannot consider facts that are not of record); *State v. Lucero*, 104 N.M. 587, 725 P.2d 266 (Ct.App.1986) (appellate court will not consider argument on appeal unless the argument was made below). Moreover, the state has not explained why in lieu of proceeding against defendant by indictment, it could not have proceeded by criminal information.

■ Whether delay resulting from attempts to reach an agreement concerning a plea bargain is chargeable against either party in computing defendant's speedy trial claim is an issue of first impression in this jurisdiction. In essence, the state argues that the unsuccessful plea negotiations consumed approximately four months, that the plea negotiations were for the benefit of defendant, and therefore those four months of the delay period should be treated as a valid reason for delay. *See State v. Manes*, 112 N.M. 161, 812 P.2d 1309 (Ct. App.1991) (analyzing separately the reasons for different portions of the delay period). In support of this position, the state relies on language in *State v. Sanchez*, 109 N.M. 313, 785 P.2d 224 (1989), and *State v. Mendoza*, 108 N.M. 446, 774 P.2d 440 (1989), in which the six-month rule, *see* SCRA 1986, 5–604(B), was held

suspended during periods of delay found to be for the benefit of the defendant. *See also State v. Lucas*, 110 N.M. 272, 794 P.2d 1201 (Ct.App.1990) (time during which agreed-upon plea bargain is being assessed by the court suspends running of six-month rule).

Defendant points out that plea bargaining is explored in numerous cases and that in some proceedings negotiations between the prosecution and the defense continue from the date of arrest through the trial and end only when the jury returns a verdict. Thus, defendant argues that the state's proposed disposition, if accepted, would have the effect of vitiating the constitutional right to a speedy trial.

We believe the position advocated by the state is too sweeping in its effect. If the plea negotiations in this case had resulted in an agreement on a particular plea bargain to be presented to the trial court, or if the facts gave rise to circumstances indicating that the parties implicitly agreed to stay the time within which to process defendant's trial, we would agree that the time between the reaching of the agreement and its presentation to the trial court for approval or disapproval would be a period of delay for which there was a valid reason not to charge the state with such delay. *See United States v. Jones*, 475 F.2d 322 (D.C.Cir.1972) (period of time involved in considering defendant's pretrial motions, as well as the time consumed by efforts toward disposition of the case by plea, not held against either party). *Cf. State v. Sanchez* (period of time resulting from trial court's assessment of plea bargain submitted by the parties held excludable from time constraints of six-month rule); *State v. Lucas* (time during which plea agreement is being assessed by trial court suspends running of time period under six-month rule). Similarly, we would agree that any time period during which the parties explicitly agreed to delay further proceedings to explore plea negotiations also constitutes a period of time for which a valid reason for delay existed. *See United States v. Litton Systems, Inc.*, 722 F.2d 264 (5th Cir.) (delay resulting from defendant's efforts to resolve case by plea

bargain not chargeable to state where parties agreed that neither side would make any move to alter status quo of case), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984); *State v. Pippin*, 72 N.C.App. 387, 324 S.E.2d 900 (1985) (the defendant's attorney requested that no indictment be brought against the defendant while plea negotiations were being discussed; court held that any time periods actually attributable to the defendant's requested plea negotiations should be viewed as periods during which he has waived speedy trial claim).

In the absence of facts indicating an express or implicit agreement between the parties to stay the time within which to bring defendant's case to trial within the speedy trial requirements of the sixth amendment, we follow the approach of other jurisdictions and decline to automatically adopt a per se rule attributing delay resulting from attempted plea negotiations to a specific party. *See State v. Smith*, 495 N.E.2d 539, 542 (Ind.Ct.App.1986); *People v. Butcher*, 46 Mich.App. 40, 44, 207 N.W.2d 430, 433 (1973); *Reed v. State*, 506 So.2d 277 (Miss.1987). In the absence of an agreement between the parties, the extent to which attempted plea negotiations constitute a valid reason for delay or should be charged against the state, defendant or both parties involves a factual issue to be determined by the trial court under the facts and circumstances of each particular case.

■ Examination of the stipulated evidence herein indicates that in several instances defendant's attempts to negotiate a plea bargain were prolonged in part by delays by the prosecution in responding to defendant's proposals. Moreover, the primary responsibility for according defendant his right to speedy trial rests with the state. *Salandre v. State* (state bears the primary responsibility to bring criminal cases to trial within a reasonable time). Thus, on the facts herein, we agree with the trial court that the unsuccessful plea negotiations in this case did not constitute a valid reason for suspending the time peri-

od with regard to defendant's right to a speedy trial and charge such period of delay against the state. Accordingly, we hold that the reasons for the delay in this case should weigh against the state, but not heavily. *See Zurla v. State* (delays due to bureaucratic indifference are weighed more heavily against the state than simple case overload). *Cf. Kilpatrick II*, 104 N.M. at 445, 722 P.2d at 696 (deliberate delay in order to gain tactical advantage at trial is weighed heavily against the government). *Accord State v. Owens*, 778 S.W.2d 135, 138 (Tex.Ct.App.1989) (affirming trial court's determination that on the facts of that case, negotiations, among other things, were not a valid reason for seven-month preindictment delay).

### C. *Assertion of the Right*

■ The record demonstrates that defendant made a timely assertion of his right by filing the motion for speedy trial and motion to dismiss shortly after receipt of notice of the first trial setting. *See Work v. State.* Our examination of the record and review of the trial court's remarks during the motion hearing indicate that the court considered the initiation of plea negotiations by defendant as constituting, in effect, an early assertion of his speedy trial right, thus causing the trial court to weigh this factor heavily against the state. *See Zurla v. State. Zurla*, however, is distinguishable as involving an explicit demand that the state proceed to try the defendant. In this case, while defendant made efforts to resolve the charges against him, his efforts fall short of an explicit demand that the state proceed to indictment or trial. Thus, we treat this as a case in which defendant asserted his right in a timely manner, but did no more. Thus, we weigh this factor against the state, but not as heavily as in *Zurla*.

### D. *Prejudice to the Right to Speedy Trial*

This factor is the most troublesome. *See Work v. State.* The speedy trial guarantee protects several different interests. As the Supreme Court observed in *Barker*:

[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. * * * Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.

*Id.,* 407 U.S. at 519–20, 92 S.Ct. at 2186–87 (footnotes omitted). As observed by the United States Supreme Court, the constitutional right to a speedy trial is essential to protect "at least three basic demands of criminal justice ... '[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself.' " *Smith v. Hooey,* 393 U.S. at 378, 89 S.Ct. at 577 (quoting *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966)); *see also Zurla v. State.* We examine each of these factors separately.

### 1. Oppressive Pretrial Incarceration

One of the interests protected by the right to speedy trial is the right to be free of oppressive pretrial incarceration, or the lesser but still significant restrictions that flow from the posting of bond. *See Kilpatrick II,* 104 N.M. at 445, 722 P.2d at 696. It is undisputed that in this case defendant was subject to the restrictions of the bond he posted throughout the period of time between his arrest and the dismissal of charges against him. Thus, defendant, although released on bond, was to some degree subject to restrictions of his freedom resulting from the pending charges.

Defendant also argues that the delay in this case deprived him of the opportunity to serve concurrent sentences. *See Zurla v. State.* After the trial court ordered this case dismissed, our supreme court handed down *Salandre* in which the court amplified the proper analysis applicable to evaluating claims of denial of a defendant's right to a speedy trial. In *Salandre,* the supreme court held that a defendant does not suffer the loss of the possibility of concurrent sentencing because of lengthy delay in bringing the charges to trial if the defendant is released from the incarceration on the parole violation before the delay becomes presumptively prejudicial. In this case defendant was released from the incarceration on the parole violation five months after he became an accused for speedy trial purposes, which is four months before the delay in his case became presumptively prejudicial. Thus, on the facts of this case, we conclude that the delay did not cause defendant to lose his opportunity to serve concurrent sentences. *See Salandre v. State.* However, as observed above, we determine that defendant was subjected to some degree to restrictions on his freedom.

### 2. Anxiety and Concern

The stipulation of facts did not directly cover this issue. However, we believe that on the facts as stipulated, a reasonable inference may be drawn that defendant suffered a degree of anxiety and concern as a result of the pending charges. We recognize that anxiety and concern are common ingredients surrounding the filing of criminal charges in most cases. *See State v. Garcia,* 110 N.M. 419, 796 P.2d 1115 (Ct.App.1990). However, the question for purposes of speedy trial analysis is whether such anxiety and concern, once proved, has continued for an unacceptably long period. *Salandre v. State.* We conclude that although the state has shown that defendant did not sustain undue or unusual anxiety or concern, defendant nevertheless sustained some anxiety and concern. On balance, however, we find that the presence of anxiety and concern on

the part of defendant has not been shown to weigh heavily under the facts herein.

### 3. *Impairment of the Defense*

■ At the hearing before the trial court, defendant indicated that his memory of events had faded during the passage of time. While allegations of faded memory, without more, are insufficient to establish actual impairment to the defense, *see State v. Grissom*, defendant's showing in this case is similar to the showing in *Work*, where the defendant showed weakness in a potential witness's memory. The supreme court viewed this as reinforcing the presumption of prejudice and a similar result should obtain here.

### BALANCING THE FACTORS

■ In conclusion, the delay in this case was presumptively prejudicial. The trial court determined that the reasons for the delay were not valid and thus should be weighed against the state. We affirm this finding. Defendant asserted his right to a speedy trial in a timely fashion, and thus that factor should also be weighed in his favor and against the state. Finally, defendant has shown some prejudice to his right to a speedy trial because he was subject to the restrictions of bond, and to some degree of anxiety and concern for a period of approximately thirteen months. Moreover, the state has not rebutted the presumption of prejudice that was corroborated by defendant's showing. In short, under the facts of this case, the evidence indicates that each of the *Barker* factors weighs against the state but not heavily. We view this case as similar on the facts to *Salandre*. In comparing the factors in this case with both *Salandre* and *Work*, we find that defendant's case for a speedy trial violation is at least as strong. Although the extent of prejudice is slight, as in *Salandre*, and might not justify dismissal of the charges standing alone, on balance we conclude that defendant's right to a speedy trial was violated. Accordingly, we hold the trial court did not err in its dismissal of the charges against defendant on the ground that delay in this case chargeable to the state violated defendant's constitutional right to a speedy trial.

### CONCLUSION

The order of the trial court dismissing the charge against defendant with prejudice is affirmed.

IT IS SO ORDERED.

MINZNER, J., concurs.

BIVINS, J., dissents.

BIVINS, Judge, dissenting.

The district judge indicated that she felt compelled to dismiss based on violation of defendant's sixth amendment speedy trial rights in light of *Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990), but invited the state to appeal. The state did and the majority affirms the dismissal. While the district judge's reading of *Zurla* may have warranted dismissal, I believe that the supreme court's most recent pronouncement in *Salandre v. State*, 111 N.M. 422, 806 P.2d 562 (1991), warrants a determination of no violation and should permit this case to proceed to trial on the merits. I will not repeat the majority's discussions of *Salandre*, but will give my dissenting view as to how I think each factor should be weighed and finally balance those factors.

### 1. *Length of Delay.*

The majority determines a thirteen-month delay and I agree. Although four months of that delay was taken up with negotiations which in part benefitted defendant, *Salandre* teaches that such period should not be subtracted from the length, but may, as I read the decision, be considered under the reason for delay. The thirteen-month delay is presumptively prejudicial and, therefore, triggers the balancing requirement.

### 2. *Reason for Delay.*

Although part of the delay was occasioned waiting for grand jury so the defendant could be indicted, the state does not rely on that as a reason. Instead it argues that the time spent in plea negotiations

initiated by defendant should not be held against the state.

The state breaks down the thirteen-month delay as follows: prior to the indictment there was an eight-month delay; after indictment a five-month delay to trial date. With regard to the post-indictment delay, this five-month delay was not unreasonable. *See* SCRA 1986, 5–604(B). Therefore, argues the state, the real focus should be on the eight-month delay from arrest to indictment. Of that time the state points to three and one-half weeks of active plea negotiations and four months of negotiations and a three-month period from the breakdown of negotiations until indictment.

There were six pleas discussed within the four-month period. Defendant argues that the state could and should have sought an indictment notwithstanding those negotiations. While this may be so, *contra United States v. Litton Systems, Inc.*, 722 F.2d 264 (5th Cir.1984) (difficult to charge prosecution with failure to try defendant while defendant was engaged in seeking legal relief, including plea bargaining, to prohibit trial; but when negotiations were terminated, state should have pressed for expeditious disposition of pending motions), it is worth noting that at no time before approximately six weeks prior to the trial date did the defendant demand prosecution. *See United States v. Jones*, 475 F.2d 322 (D.C.Cir.1972) (no meaningful assertion of right where defendant waits until evening of trial to invoke it and then only as a basis for getting rid of the prosecution). In my opinion the reason for delay favors neither side and should be rated as a neutral. *See United States v. Jones* (no real basis for faulting either side); *State v. Pippin*, 72 N.C.App. 387, 324 S.E.2d 900 (1985) (plea bargaining is mutually beneficial).

I would rate it as a neutral for an additional reason, a policy reason. Unless the state acts in bad faith in negotiations—that is, for example, negotiating in bad faith to gain time or delay—I see problems in penalizing the state for entering into negotiations, particularly where, as here, they were initiated by the defendant. *See State v. Pippin* (permitting defendants to avail themselves of this beneficial process and then to subsequently base speedy trial claims on delays expended in plea negotiations would be grossly prejudicial to state); *Reed v. State*, 506 So.2d 277 (Miss.1987) (where defendant acquiesced in and initiated much of the plea bargaining that caused delay, defendant cannot thereafter complain). The law favors settlements. *Bogle v. Potter*, 68 N.M. 239, 360 P.2d 650 (1961). If we were to hold this reason against the state, we would discourage settlement negotiations and plea bargains. This would not only violate public policy but would, I believe, bring about a rather strange and ironic result. In many of these speedy trial cases, particularly out of the Second Judicial District, shortage of manpower has been cited as one of the reasons for delay. Although perhaps not always excusable, I would think that the courts would be most reluctant to add to that problem by discouraging settlements which would undoubtedly free up more prosecutors to process other cases.

### 3. *Assertion of Right.*

There is no argument here that defendant timely asserted his right, although it is worth noting again that this was done after the trial court scheduled the case for trial and only six weeks prior to the trial date. If defendant truly suffered from any of the rights guaranteed by the sixth amendment, one would expect that he would make such assertion early and often. *See Zurla. See also United States v. Jones.*

### 4. *Prejudice.*

Defendant offers nothing more than generalized prejudice in the form of anxiety, worry, lapse of memory; items that one would expect to result from accusation of almost any crime. In other words, he did not offer any testimony of a particularized nature. The state argues that where the claim of the prejudice is of a general nature, the burden of proof placed on it under *Zurla* is not only onerous but virtually impossible. Thus, the state says that if it

does not know what particular prejudice is claimed, it has no way to meet its burden.

The three elements of prejudice claimed by defendant are weak. First, with respect to his claim of liberty, he was placed on bond at the time of his arrest and did not argue below that his freedom was restricted. *See United States v. Jones.* Additionally, it is uncontested that part of defendant's incarceration was for a parole violation. *Zurla* teaches that losing the opportunity to serve concurrent sentences may be a consideration; however, here that would not apply because defendant was released before the delay became excessive. Second, defendant offered no testimony as to specific anxiety; therefore, the state has nothing to overcome. Finally, as to impairment of defense, defendant indicates, without testimony as to specific impairment, that his memory faded. Again, given the simple nature of the case, battery on a police officer, it was the officer's word against the defendant's. Absent some medical basis for loss of memory, I do not find a claim of loss of memory in thirteen months persuasive, particularly with ongoing criminal proceedings and plea negotiations taking place during that span. *Cf. Zurla* (potential loss of two witnesses who may have witnessed incident). Furthermore, defense counsel conceded that this is not an "in-depth factual circumstance." *See also State v. Grissom,* 106 N.M. 555, 746 P.2d 661 (Ct.App.1987) (unspecified allegations of impaired defense are unpersuasive); *United States v. Litton Systems, Inc.* (before trial, degree to which delay has impaired defense is speculative at best).

*Salandre* states that the presumption of prejudice guarantees the dismissal of the charges only in face of the state's failure to advance either evidence or argument in support of its burden to show that there has been no violation of the speedy trial right. In this case, I think, the state more than adequately met that burden. With the reason for delay weighing neither in favor of defendant nor against the state, the assertion of the right by defendant weighing in his favor but certainly not heavily, and there being no showing of prejudice, I would hold the defendant's

sixth amendment rights were not violated. In *Salandre,* the court concluded that case was a close one. Based on *Salandre,* I would say that this is not a close case.

With all due respect, I believe the majority has misread *Salandre.* If I am incorrect, then it will be extremely difficult for the state to meet its burden in speedy trial claims. In looking back at *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the seminal case on the subject, one has to question whether the sixth amendment to United States Constitution requires the result reached by the majority today. In my opinion it does not.

For the reasons stated, I respectfully dissent.