This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                     NO.  32,962

**JON KINGSTON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM
Vicki W. Zelle, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

{1}     Defendant entered a conditional plea to driving while intoxicated, reserving the right to appeal the denial of his speedy trial motion. Reviewing the facts and circumstances of the case, we are concerned with the delay and impairment of Defendant's defense attributed to the Public Defender Department (now the Law Office of the Public Defender), but cannot conclude that the length of time Defendant's case was pending transgresses his constitutional right to a speedy trial. Accordingly, we affirm his conviction. Issues bearing on the quality of the representation he received are better taken up, if at all, in a habeas corpus proceeding.

I.     BACKGROUND

{2}     The State filed a criminal complaint against Jon Kingston (Defendant) on October 3, 2008, and Defendant was arraigned in metropolitan court on October 16, 2008. From the time Defendant qualified for a public defender prior to his arraignment through the first trial setting of March 5, 2009, the public defender's office failed to assist Defendant despite his efforts to receive assistance in preparing for trial.

{3}     On October 15, 2009, Defendant filed a motion to dismiss the case for violation of his right to a speedy trial. The metropolitan court denied Defendant's motion on October 19, 2009, and Defendant entered a conditional plea that same day, retaining his right to appeal the speedy trial issue. Defendant appealed the speedy trial issue to the district court. In a memorandum opinion, the district court affirmed the

2

metropolitan court's sentencing order. Defendant appealed to this Court, claiming that the sentencing order violates his right to speedy trial. Because the parties are familiar with the facts of this case, we discuss them as needed in the body of this Opinion to address the speedy trial issue reserved by Defendant and do not set them out at length here.

## II. DISCUSSION

### A. Jurisdiction

{4} As a threshold matter, we address the State's assertion that Defendant has already exhausted his constitutional and statutory right to appeal by appealing this issue to the district court. The State's contention on this issue has previously been resolved against the State. *State v. Armijo*, 2014-NMCA-13, 316 P.3d 902, *aff'd by order* S-1-SC-34,400, Aug. 14, 2015 (holding that the Court of Appeals has secondary appellate jurisdiction to review metropolitan court on-record appeals). We conclude that the State's challenge to this Court's jurisdiction is unavailing, and we do not address it further.

### B. Speedy Trial Right

{5} Citizens enjoy the right to a speedy trial as guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution. That right stems from a desire to prevent prejudice to the accused. *State v. Garza*, 2009-NMSC-038, ¶ 12, 146 N.M. 499, 212 P.3d 387. To

determine whether a defendant's speedy trial right has been violated, we balance and weigh four factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). These factors are evaluated as either for or against the State or the defendant, and then balanced against one another to determine if a speedy trial violation has occurred. *Garza*, 2009-NMSC-038, ¶ 13. When reviewing an appeal from an order ruling on speedy trial, we afford deference to the district court's factual findings, but review the weighing and balancing of the four factors de novo. *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272; *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 18, 327 P.3d 1129, *cert. denied*, 2014-NMCERT-006, 328 P.3d 1188.

**1.     Length of Delay**

{6}     Delay in bringing a case to trial can be "presumptively prejudicial." At that point, it acts as a triggering mechanism to a speedy trial inquiry. *Garza*, 2009-NMSC-038, ¶ 23. "[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31. Greater delay weighs more heavily against the State. *Garza*, 2009-NMSC-038, ¶ 24. Our Supreme Court's guidelines for what constitutes a presumptively prejudicial delay explain that a simple case becomes presumptively prejudicial after one year. *Id.* ¶ 48.

{7}     The parties are in agreement that this is a simple case. The district court made no finding regarding the complexity of this case, permitting us to to make that

4

determination. *State v. O'Neal*, 2009-NMCA-020, ¶ 16, 145 N.M. 604, 203 P.3d 135. *State v. Laney*, points out that a simple case is one in which the witnesses are mostly law enforcement and there is little investigation, as this case presents. 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591. As such, the presumptively prejudicial time period that we apply is one year. *Garza*, 2009-NMSC-038, ¶ 47. This case goes three days past that limit, so we are obligated to engage in a speedy trial analysis. *Id.* ¶ 16. Though the time is presumptively prejudicial, the delay in this case "scarcely crosses the bare minimum needed to trigger judicial examination of the [speedy trial] claim." *Id.* ¶ 24 (internal quotation marks and citation omitted). Accordingly, the prejudice from the length of time alone does not weigh heavily in Defendant's favor, as it was neither extraordinary nor protracted. *Id.*

**2.      Reason For the Delay**

{8}      In the context of the speedy trial balancing test, there are three remaining types of delay: (1) deliberate or intentional delay, (2) negligent or administrative delay, and (3) valid or reasonable delay. *See State v. Montoya*, 2015-NMCA-056, ¶ 16, 348 P.3d 1057; *Barker*, 407 U.S. at 531. Deliberate delays made in bad faith weigh heavily against the government. *Garza*, 2009-NMSC-038, ¶ 25. Negligent or administrative delays including bureaucratic indifference, overcrowded courts, congested dockets, and reassignment of judges are considered a more neutral reason and are weighed against the State, but not heavily. *Garza*, 2009-NMSC-038, ¶¶ 26, 29; *State v.*

*Steinmetz*, 2014-NMCA-070, ¶ 7, 327 P.3d 1145, *cert. denied*, 2014-NMCERT-006, 328 P.3d 1188; *Montoya*, 2015-NMCA-056, ¶ 16. The degree of tolerance for negligent delay is inversely proportional to the length of delay. *Id.* ¶ 26.

{9}     Valid reasons for delay include missing witnesses, *State v. Fierro*, 2014-NMCA-004, ¶ 14, 315 P.3d 319; time spent opposing pretrial motions, *Vigil-Giron*, 2014-NMCA-069, ¶ 21; and attempted plea negotiations, *State v. Lujan*, 1991-NMCA-067, ¶ 13, 112 N.M. 346, 815 P.2d 642 (holding that if plea negotiations are to be a valid reason for delay the trial court must determine against whom the time is charged as a factual matter). Where a case moves toward trial with customary promptness, inevitable yet wholly justifiable delays will be weighed neutrally between the parties. *State v. Valencia*, 2010-NMCA-005, ¶¶ 18-19, 147 N.M. 432, 224 P.3d 659.

{10}     The first delay with which we are concerned encompasses the period between Defendant's qualification for a public defender on October 7, 2008, and the public defender requesting a continuance to contact defense witnesses on March 5, 2009. The State does not dispute Defendant's version of the facts. At his arraignment on October 16, 2008, Defendant complained that he had not been able to determine who his lawyer was. The State provided discovery at the first pretrial conference on November 17, 2008, two days before the public defender generically entered its appearance on November 19, 2008; a second pretrial conference was required. A public defender

6

assigned to the courtroom was present, but provided no practical benefit to Defendant's representation. At the second pretrial conference on January 5, 2009, the public defender represented that Defendant was "ready to roll" to trial, and the court set a March 5, 2009 trial date. At some time subsequent to this pretrial conference, Defendant was interviewed by a public defender paralegal, and identified some potential defense witnesses. Nothing was done. During the three weeks preceding March 5, 2009, Defendant repeatedly called the public defender trying to leave messages, but was never able to identify or speak with an attorney assigned to his case.

{11}     In court at the March 5, 2009 trial setting, Defendant first met his trial counsel, who orally entered his appearance. Defense counsel requested a continuance, representing to the court that he had only just met his client, and had become aware for the first time of necessary witnesses Defendant had previously disclosed to the public defender's paralegal. Defense counsel revealed that he and Defendant "have not had a chance to correspond" until the March 5, 2009 trial date and that necessary investigations were simply not done. As the State objected that such problems were "the reason for malpractice insurance," defense counsel agreed to a sixty-day extension of the 182-day rule (set to run on April 14, 2009), which was granted, along with the extension. Defendant filed a witness list six days later. The next trial date was set for April 23, 2009.

{12}     Our Legislature passed the Indigent Defense Act, NMSA 1978, §§ 31-16-1 to -10 (1968, as amended through 1973), that confers a statutory right on an indigent criminal defendant to, at the State's expense, "be represented by an attorney to the same extent as a person having his own counsel and to be provided with the necessary services and facilities of representation, including investigation and other preparation." Section 31-16-3(A). We have previously recognized that there are unreasonable and unnecessary delays caused by counsel that do not inure to a defendant's "benefit," and therefore, cannot be attributed to a criminal defendant in speedy trial calculations. *State v. Stock*, 2006-NMCA-140, ¶ 21, 140 N.M. 676, 147 P.3d 885. The time between the request for a defense continuance on March 5, 2009, and the April 23, 2009 trial date is just such a delay. This period did not benefit Defendant, because until March 5, 2009, his appointed counsel, despite Defendant's active attempts to secure his rights, neglected Defendant's right to investigation and preparation of his case for trial as conferred by the State in the Indigent Defense Act. The delay was due to previous counsel's misrepresentation to the court in January 2009 that Defendant was ready to proceed to trial, and the public defender's failure, either collectively or individually, to timely investigate Defendant's case. As a result, the continuance benefitted only defense counsel, whose neglect necessitated the delay despite Defendant's efforts. This delay between March 5 and April 23 cannot justly

8

be attributed to Defendant, and will not be counted against him.[1] *See State v. Serros*, 2015-NMSC-___, ¶ 46, ___ P.3d ___ (No. S-1-SC-34637, Nov. 12, 2015) (stating that where counsel acts contrary to a defendant's wishes and interest, time is not weighed against the defendant).

{13} On April 16, 2009, Defendant filed a stipulated motion to continue the trial because he had not yet received medical records that he intended to introduce into evidence, and could not disclose them to the State. This delay lasted from the April 23, 2009 trial setting to the May 13, 2009 trial setting, and Defendant acknowledges that it is attributable to and weighs against him.

{14} On May 13, 2009, the State requested a continuance because two witnesses it intended to call were not present when the case was called. *See Fierro*, 2014-NMCA-004, ¶ 14 (acknowledging that a missing witness is a "valid reason" for delay). Defendant, who had all of his witnesses in attendance pursuant to subpoena, objected. The metropolitan court granted the motion, and determined that this delay weighed against the State. As an unremarkable delay under *Fierro*, the delay that resulted,

---

[1] We note with approval Judge Zamora's dissent in the unpublished case of *State v. Serros*, 2014 WL 1998986, No. 31,565, mem. op. ¶ 60 (N.M. Ct. App. Mar. 10, 2014) (non-precedential), in which a "[d]efendant's fundamental right to a speedy trial was disrupted by his fundamental right to counsel." *See id.* ¶ 83 (arguing that where counsel delays the case by "inaccurate representations, inattention to the progress of the case, and resulting delays" despite a "[d]efendant's desire to go to trial, and more importantly, . . . his fundamental right to a speedy trial," delay should not be attributed to the defendant).

9

lasting from May 13, 2009 to June 9, 2009, therefore weighs only slightly against the State.

{15} On June 9, 2009, the State was ready for trial, but Defendant requested a continuance due to the absence of a key witness, to which the State agreed. Defendant asserts that since a two-week continuance would have been adequate for his purposes, and a thirty-day continuance should have been adequate to accommodate the metropolitan court's docket, the seventy-one day delay that resulted from the court's setting the trial for August 19, 2009, should not be entirely attributable to him.

{16} The final delay occurred when the State requested a continuance on August 14, 2009, causing an additional delay from August 19, 2009 to October 19, 2009. The State concedes that this delay is properly attributed to the State, and we note that it was due to the arresting officer having been on military duty since June 29, 2009. Because it was due to the unavailability of a witness whose prospective absence for military duty from June 2009 was known to the State, it weighs slightly against the State.

{17} Although both Defendant and the State requested various continuances due to missing and unavailable witnesses, defense counsel contributed additional delay by failing to contact Defendant and adequately investigate Defendant's case prior to the initial trial date. Even so, the delays in the case and reasons for them weigh more heavily against Defendant than they do against the State.

10

**3.    Assertion of Speedy Trial Right**

{18}    In affording weight to a defendant's assertion of the right to a speedy trial, courts necessarily analyze the circumstances of each individual case. *Garza*, 2009-NMSC-038, ¶ 33 (acknowledging that different weight should be given to a knowing failure to object and an acquiescence to a long delay without being adequately informed of the accompanying consequences). In fact, assertion of the right is "entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. The timeliness and vigor with which the right is asserted may be used in determining whether the defendant was "denied needed access to [a] speedy trial over his objection or whether the issue was raised on appeal as [an] afterthought." *Garza*, 2009-NMSC-038, ¶ 32.

{19}    From his first appearance in court, Defendant was obviously concerned with the expeditious progress of his case. It is undisputed that Defendant asserted his right in writing and in a prompt manner. Although this culminated in a motion to dismiss filed only days before his October 2009 trial date, we take into account that Defendant also opposed the State's continuances and filed his motion to dismiss as soon as the case reached the presumptively prejudicial one-year mark. This factor in the *Barker* test therefore weighs in Defendant's favor.

**4.    Prejudice to the Defendant**

**{20}** There are three types of prejudice. Defendant does not allege prejudice from oppressive pretrial incarceration. Here, we consider prejudice caused by the anxiety and concern of the accused and prejudice from the possibility that the accused's defense was impaired. *Id.* ¶ 35. A defendant must make a particularized showing of prejudice when asserting prejudice because of a speedy trial violation. "[W]e will not speculate as to the impact of pretrial incarceration . . . or the degree of anxiety a defendant suffers." *Id.* The third type of prejudice—impairment to the defense—is considered the most serious. *Id.* ¶ 36. It too, however, must be substantiated by a particularized showing. *Id.* For instance, in asserting prejudice from witness unavailability, a defendant must state, with particularity, what exculpatory testimony would have been offered and what caused the unavailability. *Id.* ¶ 36.

**{21}** Defendant asserts prejudice through the second and third prong: anxiety and impairment of his defense. Defendant's attempts to compare his physical ailments, such as sleepless nights and high blood pressure, with those of the defendant in *Vigil-Giron*, 2014-NMCA-069, ¶¶ 51, 54, where the defendant suffered from hypertension, insomnia, joint pain, and rheumatoid arthritis. This comparison is unpersuasive because while Defendant's health conditions preceded the filing of the complaint against him, the prejudice enumerated by the defendant in *Vigil-Giron* occurred as a result of her indictment. *Id.* ¶ 51.

12

{22}     Defendant also points to the Motor Vehicle Division's revocation of his driver's license, and his inability to visit his family that resulted from that revocation, as another source of anxiety and concern stemming from this case. He further asserts that the revocation of his driver's license constitutes a limitation upon his liberty that was imposed as a condition of release during the pendency of this action. He does not, however, cite to any authority that supports his assertion that losing a driver's license constitutes a limitation of a liberty. *See Glynn v. State, Taxation & Revenue Dep't*, 2011-NMCA-031, ¶ 26, 149 N.M. 518, 252 P.3d 742 (stating that "a person's liberty interests are not at stake in an MVD license revocation proceeding" and that the loss of the ability to drive a vehicle is "the loss of a privilege, not the loss of a right"), *overruled on other grounds by Schuster v. State Dep't of Taxation & Revenue*, 2012-NMSC-025, ¶ 1, 283 P.3d 288. We therefore do not consider this portion of Defendant's prejudice argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to review an undeveloped argument that is not supported by legal authority).

{23}     Defendant also asserts that the delay prejudiced his defense because securing four defense witnesses for six different trial settings was burdensome and problematic. Additionally, Defendant complained that rather than being able to secure personal service of process for one of his witnesses, he was forced to secure substitute service of process. But, despite that witness's absence from the courtroom on various

13

occasions, including the October 19, 2009 trial setting, Defendant made no proffer regarding what exculpatory testimony that witness would have given or why the witness was absent.[2] In light of Defendant's failure to properly assert prejudice, we conclude that this portion of the *Barker* test weighs in the State's favor.

**5.      Balancing the Factors**

{24}      Defendant sufficiently asserted his speedy trial right. In this case, the length of delay was not extraordinary; it only just surpassed the presumptively prejudicial guidelines set forth by our Supreme Court in *Garza*. The reason for the delay, overall, was mostly attributable to Defendant. Defendant failed to make a particularized showing of prejudice stemming from the case and its delay in proceeding to trial. Because Defendant failed to show prejudice and the other factors do not weigh heavily in his favor, we cannot conclude that Defendant's right to a speedy trial was violated. *Garza*, 2009-NMSC-038, ¶ 40. Accordingly, we affirm the metropolitan court's sentencing order.

{25}      **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

---

[2]Defense counsel makes a vague reference to the witness's testimony going to the "lack of basis" for an anonymous tip call that was pertinent to an officer's reasonable suspicion determination. This does not satisfy the requirement that Defendant state, with particularity, the testimony to be given.

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**


_____
**M. MONICA ZAMORA, Judge**